# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3154 | **DATE** | 1/7/2005 |
| **CASE TITLE** | | Harden, et al. vs. Barnhart | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Claimant's motion for summary judgment [18-1] is denied and the Commissioner's motion for summary judgment [21-1] is granted. The Commissioner's decision to deny Supplemental Security Income child's benefits to Claimant's daughter, Sharkie Harden, is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | JAN 1 0 2005 | |
| | Notified counsel by telephone. | date docketed | 24 |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 1/7/2005 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| DK | courtroom deputy's initials | | DK |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOYCE HARDEN, for )
SHARKIE HARDEN )
               )
     Plaintiff, )    Case No. 04 C 3154
               )
     v. )    Magistrate Judge Morton Denlow
               )
JO ANNE B. BARNHART, )
Commissioner of Social Security, )
               )
     Defendant. )

JAN 1 0 2005

## MEMORANDUM OPINION AND ORDER

Plaintiff Joyce Harden ("Claimant"), on behalf of her child Sharkie Harden

("Sharkie"), challenges the decision of Defendant Jo Anne B. Barnhart, Commissioner of

Social Security ("Commissioner"), claiming that her denial of Supplemental Security Income

("SSI") should be reversed or remanded because the decision contains errors of law and is

not supported by substantial evidence. This case comes before this Court on the parties'

cross-motions for summary judgment. For the reasons that follow, this Court affirms the

Commissioner's decision, grants the Commissioner's motion for summary judgment and

denies the Claimant's motion for summary judgment.

# I. BACKGROUND FACTS

## A. PROCEDURAL HISTORY

Claimant filed an application for SSI on November 16, 1993. R. 17, 72. The Claimant was found to be disabled and eligible for benefits as of November 19, 1993. *Id.* Pursuant to P. L. 104-193, effective August 22, 1999, Claimant's disability was found to have ceased. R. 17, 76. In March 2000, the state agency affirmed the cessation of the Claimant's benefits, and the Claimant requested a hearing before an administrative law judge ("ALJ"). R. 76. On July 20, 2001, a hearing was held before ALJ Edward R. Gustafson, at which Claimant was represented by counsel. R. 25-71. Claimant and medical expert, Dr. Howard Lee, M.D., testified at the hearing. *Id.* On February 14, 2002, the ALJ issued a final decision finding Sharkie not disabled. R. 14-21. Claimant's request for review was denied by the Appeals Council. R. 5-8. Claimant filed a timely complaint with this Court for review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). The parties have consented to this Court's jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c)(1).

## B. HEARING TESTIMONY - JULY 20, 2001

### 1. Claimant's Testimony

Sharkie was 15 years old and in ninth grade at the time of the hearing. R. 28-29. Sharkie lives at home with Claimant and three other siblings. R. 34. Sharkie has few friends and spends most of her time at home. R. 46.

Sharkie has struggled with her grades and her ability to learn throughout grammar

school and into middle school. R. 31. She has problems with teachers and receives extra tutoring. R. 30. Sharkie is a special education student who receives extra academic help in reading and in mathematics. R. 31. At the time of the hearing, Sharkie was operating three years behind grade level. R. 31-32. Despite her troubles, including both academic as well as emotional problems, Sharkie straightened out a bit in eighth grade. R. 36. Sharkie graduated eighth grade and entered high school in the fall of 2000. R. 39.

Sharkie failed her first year of high school and she was enrolled in summer school at the time of the hearing. R. 39. In her first year of high school, the school created a new Individualized Education Plan ("IEP") increasing her minutes in special education with the hopes of improving her performance. R. 40.

Due to her problems in her first year of high school, Sharkie received additional help at both the Chicago Department of Public Health and at Mercy Hospital. R. 44. At the Chicago Department of Mental Health, Sharkie underwent counseling from June 2000 through January 2001. R. 134-150. In June 2001, Sharkie underwent a mental health assessment at Mercy Hospital. R. 193. In August 2001, Sharkie underwent a psychiatric evaluation at Mercy Hospital. R. 199.

### 2. Howard Lee, M.D. – Medical Expert

At the February 14, 2001 hearing, Dr. Howard Lee examined the Claimant regarding Sharkie's learning disabilities. Dr. Lee questioned Claimant in several areas, and according to the ALJ, the Claimant seemed to take Dr. Lee's questioning as "accusatory of her conduct

as a mother." R. 19. Therefore, the ALJ stopped the hearing prior to completion because the Claimant became too emotional. R. 69-70. Because the examination by Dr. Lee was incomplete, the ALJ sent Sharkie out for a psychological exam. R. 69-70.

## C. SCHOOL AND MEDICAL EVIDENCE

### 1. Cynthia Turner – School Psychologist

On April 6, 1994, when Sharkie was in second grade and enrolled in regular education classes, school psychologist Cynthia Turner performed a psychological evaluation. R. 226. Turner noted that Sharkie had "slow average cognitive development" with adequate math skills, but reading skills below grade placement. R. 227. Turner also noted emotional immaturity and insecurity. *Id.*

On June 14, 1994, Claimant and Sharkie attended a multidisciplinary conference for the Chicago Public School's Department of Special Education. R. 108. It was determined that regular classroom placement was not meeting Sharkie's needs due to moderate learning disabilities. R. 116. Sharkie's deficits were in receptive language, language concept formation and spatial memory. R. 108. However, a speech/language evaluation revealed no significant inarticulation pattern and receptive/expressive language skills were within normal limits, with the exception of expressive vocabulary, which was below average. R. 109. Sharkie's school behavior was reported to be acceptable. *Id.* Sharkie's poor attendance could have impacted her performance. *Id.* Turner determined that Sharkie would remain in regular education classes and receive special education and related services in another setting for less

4

than 50% of each day. R. 115. Sharkie received these special education services due to her learning disabilities from the beginning of the next school year, 1995, through 1999. R. 264-307.

### 2. Janice A. Nicholson, M.A. – School Psychologist.

In May 2000, in a triennial evaluation for the Chicago Public Schools, Sharkie was evaluated by Janice A. Nicholson, M.A., School Psychologist. R. 325-328. Sharkie was in eighth grade at the time. Nicholson noted that current testing put Sharkie's cognitive functioning and intellectual capabilities to be in the "Borderline" or "Slow-learner range." R. 327. Nicholson noted that while Sharkie's non-verbal skills were in the average range, her verbal ability was below average. R. 328. Nicholson also noted that the cumulative records indicated Sharkie had a high rate of tardiness and transience, being enrolled in five different schools. R. 325.

During the testing, Nicholson noted that Sharkie presented as a very friendly and compliant child who appeared comfortable with testing procedures. R. 327. Nicholson also noted that teachers indicated Sharkie put forth adequate effort in class. R. 325. No significant behavior concerns were indicated, as Sharkie was described as a cheerful student who maintains good peer relations. *Id.* She recommended continued individualized instruction in a small classroom setting to remediate information processing deficits. R. 328.

### 3. Quinella Lewis, LPHA – Mental Health Counselor

In June 2000, Sharkie began counseling with Quinella Lewis at the Chicago

5

Department of Public Health. R. 134-150. She attended monthly sessions from June, 2000 to January, 2001. *Id.* A comprehensive Mental Health Assessment was performed on Sharkie. R. 134-142. Sharkie was alert, oriented and talkative. R. 141. She denied any suicidal or homicidal thoughts or tendencies. R. 134-142. Sharkie discussed a fear of men, notably her step-father, who she claims tries to rule her life. R. 138. Sharkie exhibited a longing for her real father, who she had not seen for four years. Sharkie was assessed with a risk indicator for depression, a moderate level of anxiety, and an average motivation to participate in treatment. R. 142.

### 4. Gwendolyn Baker – Learning Disabilities Teacher

On April 5, 2001, Gwendolyn Baker, Learning Disabilities Teacher at Dunbar High School completed a School Activities Questionnaire assessing Sharkie's performance and needs. R. 155. She reported that Sharkie was functioning in the ninth grade at Dunbar. She has average performance in attention span, concentration, and on-task behavior. Baker noted that Sharkie had the ability to work independently and to respond appropriately to a change of routine in classroom environment. No problems were noted in Sharkie's fine and gross motor skills. *Id.*

Baker reported appropriate behavior towards peers and teachers with occasional mild mood swings. While Sharkie tended to talk fast, her communication skills were not an issue as she would slow down when reminded to do so. *Id.*

### 5. Nicole Sumida, M.S.W. – Social Worker

On June 14, 2001, Sharkie underwent a Mental Health Assessment at Mercy Hospital with Nicole Sumida, M.S.W. R. 193-198. Sumida observed that Sharkie was neatly dressed and well groomed. R. 195. Sharkie appeared anxious and irritable and her mood shifted rapidly throughout the interview. *Id.* Sharkie was overactive, anxious, irritable and distracted. *Id.* Sharkie's speech and language skills were age appropriate, and her thought process was concrete, though distracted. *Id.*

Sumida diagnosed Sharkie with an adjustment disorder, with mixed disturbance of emotions and conduct, and oppositional defiant disorder. R. 198. Sumida recommended a psychiatric evaluation to determine the need for medication to treat the anxiety, depressive symptoms, and to explore thought disturbances. *Id.*

### 6. Dr. William N. Hilger, Jr., Ph.D. – Consultative Psychological Evaluation

Following the hearing before the ALJ, Sharkie underwent psychological testing with Dr. William N. Hilger, Jr., Ph.D. R. 199-203. Sharkie displayed a very negative attitude. R. 199. She refused to sit down, would not tell Dr. Hilger her name, age, birth date, or other identifying information. She acted as if she could not hear, though as the evaluation proceeded Dr. Hilger noted that she had no hearing difficulties, she was simply being oppositional and resistant. She claimed that it was Tuesday when it was Thursday, and when Dr. Hilger asked her if she knew why she had come in for the appointment, she said it was to get some donuts. *Id.*

When Dr. Hilger attempted to have Sharkie perform tests during this initial meeting, Sharkie acted as if she had no idea how to perform simple tasks on the WISC-II test. Whenever he attempted to encourage her to put forth more effort, Sharkie would become more sullen and negativistic. Therefore, Dr. Hilger concluded that the test results of the meeting on August 30, 2001 did not provide a valid estimate of Sharkie's intellectual functioning. Because Dr. Hilger felt that Sharkie was not cooperating, and that Claimant was making no effort to help her child cooperate, he called the ALJ to explain to both of them that cooperation was essential. The ALJ was called, and both Claimant and Sharkie said they would cooperate in a future visit. R. 200.

However, upon reconvening on September 17, 2001, after an initial showing of good effort on the WISC-II coding subtest (in which her score showed a high mental ability), it became clear to Dr. Hilger that Sharkie intended to put forth minimal and poor effort. *Id.* As the session continued, she gave up easily on tasks and had a poor attitude. *Id.* Sharkie made it very clear she did not want to be there. *Id.* It was Dr. Hilger's impression that Sharkie intended to present herself as being quite impaired, incapable, and was cleverly being very selective in her performance and responsiveness to the items. R. 205.

Based on the two meetings with Sharkie, Dr. Hilger diagnosed her with Oppositional-Defiant to undersocialized conduct disorder and probable low average intelligence, with no serious health problems. *Id.* Dr. Hilger concluded that Sharkie "likely has higher mental potential, likely extending into at least a low average range if not higher, to perform and

8

maintain age appropriate activities involving understanding and memory, sustained concentration and persistence, social interaction, and adaptation, if she were properly motivated and willing to behave in a responsible, mature manner. She attempted to present herself as being far more disturbed and incapable than she may actually be, when she likely has at most mild learning problems." *Id.*

## D.    THE ALJ'S DECISION

The ALJ issued an unfavorable decision, finding Sharkie has not been shown to have marked or extreme limitations in any of the domains of functioning. R. 17-21. Based on these findings, the ALJ determined that Sharkie was not under a "disability" and was not eligible for SSI. *Id.*

The issue before the ALJ was whether the Claimant continued to be eligible, pursuant to Section 1614(a)(3) of the Social Security Act ("Act"), to receive SSI payments as a disabled individual who has not yet attained age 18. R. 17. Section 1614(a)(3) of the Act provides that: "An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)C)(i).

The ALJ found that Sharkie was not disabled within the meaning of the Act. The ALJ reviewed Claimant's testimony, the evidence from education specialists, Sharkie's schools, social workers and doctors. The ALJ placed heavy weight on the evidence provided by

Sharkie's two sessions with Dr. Hilger. The discrepancy between Sharkie's performance at the examinations and testing with Dr. Hilger and her examination by the school psychologist the previous year was seen by the ALJ as evidence that Sharkie was being coached by the Claimant to perform poorly in front of Dr. Hilger. R. 20. The school psychologist noted that Sharkie was "a very friendly and compliant child who appeared comfortable with testing procedures." R. 20, 327. Dr. Hilger noted Sharkie's poor effort, lack of cooperation, and blatant malingering. R. 20, 199-206.

The ALJ concluded that Sharkie has not been shown to have a severe learning disability. R. 20. While her performance is school has been below grade level, the ALJ credited this to other factors in Sharkie's life, not mental and physical factors. *Id.* The ALJ cited the fact that Sharkie moved from school to school many times during her scholastic career as likely preventing her from achieving much academic success, especially combined with her low-average intelligence. *Id.* He concluded that none of the domains apply to Sharkie in any marked degree. R. 21.

## II. LEGAL STANDARDS

### A.    STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir.1993). Under such circumstances, the decision

reviewed by the district court is the decision of the ALJ. *Eads v. Sec'y of the Dep't of Health & Human Servs.,* 983 F.2d 815, 816 (7th Cir.1993).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Scivally v. Sullivan,* 966 F.2d 1070, 1075 (7th Cir.1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). A mere scintilla is not enough. *Id.* Even if there is adequate evidence in the record to support the decision, the findings will not be upheld if the "reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996).

A reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), but does not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz,* 55 F.3d at 305-06. The reviewing court has the power to enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B.     DISABILITY STANDARD

Disability insurance benefits are available to claimants who can establish "disability" under the terms of the Social Security Act. *Brewer v. Carter*, 103 F.3d 1284, 1390 (7th Cir.

11

1997).  Before 1996, a child was considered disabled if he or she had an impairment of comparable severity to an impairment that would disable an adult.  42 U.S.C. § 1382c(a)(3)(A) (1996)). *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997).  However, in 1996 Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act, Pub. L. No. 104-193, which revised the standard by which a child is considered disabled and therefore eligible for SSI benefits.  Under the new law the comparable severity criterion was repealed and replaced with the following definition: "an individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i) (1999)).  This new standard requires a "more serious impairment related limitation" than the previous standard. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1995).

Under the new standard, the Commissioner uses a three step sequential evaluation to determine a childhood disability.  20 C.F.R. § 416.924.  First, if the child is working, and the work is substantial gainful activity, the Commissioner will find the child not disabled.  20 C.F.R. § 416.924(b).  Second, any medically determinable impairment that the child has must be severe.  20 C.F.R. § 416.924(c).  If the child does not have a medically determinable impairment, or that impairment is a slight abnormality that causes no more than minimal functional limitations, the Commissioner will find the child not to be disabled. *Id.* Third, the

child's impairment must meet, medically equal, or functionally equal the listings. 20 C.F.R. § 416.924(d).

The Commissioner will consider whether the functioning equals the listings by looking at the information in the case record about how a child's functioning is affected during all of the child's activities. 20 C.F.R. § 416.926a(b). In order to establish functional equivalence at step three, a child must have a medically determinable impairment or combination of impairments that result in "marked" limitations in at least two domains or an "extreme" limitation in at least one. 20 C.F.R. § 416.926a(a). "These domains are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b). The domains are: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well being. 20 C.F.R. § 416.926a(b)(1). "The bulk of 20 C.F.R. § 416.926a is devoted to 'general descriptions of each domain' against which a claimant's functioning may be compared; and so when the dust settles, the agency retains substantial discretion." *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003).

### III. DISCUSSION

Claimants raises two issues for review: (1) whether the ALJ made findings contrary to law by not applying the medical improvement standard, and (2) whether the ALJ improperly rejected treating sources and improperly relied on the opinion of the medical expert and a consulting psychologist. The Court will address each issue in turn.

## A.   THE ALJ PROPERLY APPLIED THE NEW CRITERIA INSTEAD OF THE MEDICAL IMPROVEMENT STANDARD.

Claimant argues that the ALJ applied the improper standard in this case by using the new criteria rather than the medical improvement standard.  Also, Claimant argues that the fact that the ALJ referred to the medical improvement standard in his decision gives credence to the fact that it is the correct standard to be used.

First, the administrative posture of this case called for the ALJ to employ the new standards of review when determining whether a child has a disability as defined by the Social Security Act. *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003).  As discussed above, with the passing of P.L. 104-193, the standard changed  by which a child is considered disabled and therefore eligible for SSI benefits.  In this case, Sharkie was found disabled and eligible for benefits as of November 16, 1993, based on mental retardation.  R. 17.  However, pursuant to P.L. 104-193, Sharkie's disability was found to have ceased effective August 22, 1999.  *Id.*  The issue in front of the ALJ in this case was whether Sharkie's disability had ceased, and in order to determine that, the ALJ was bound to follow the procedures instituted by P.L. 104-193.

When Congress changed the standards for assessing childhood disability, it instructed the Social Security Administration to redetermine the eligibility of individuals who were eligible under the old standard and whose eligibility may terminate under the new standard. 42 U.S.C. § 1382c, "Historical and Statutory Notes," "Effective and Applicability Provisions," (2) "Application to current recipients."  By stating that in redetermination cases

14

involving children under the age of 18, "section 1614(a)(4) of the Social Security Act would not apply," Congress indicated that the medical improvement standard should not be used in continuing disability reviews.[1]

Further, in its Policy Operation Manual 11070.11, the SSA directed that in childhood disability redeterminations after P.L. 104-192 was passed, "[t]he medical improvement review standard in section 1614(a)(4) of the Act and 20 C.F.R. 416.994a, used in continuing disability reviews, shall not apply to these disability redeterminations."

Further, the fact that the ALJ referred to the medical improvement standard in his decision has no bearing on actual employment of that standard. R. 17. Later in his decision, he stated the correct test to be used, R. 18, and employed that test. R. 19-20. The ALJ's mention of the medical improvement standard is not a reason to remand or question whether that standard should have been employed. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different decision.")

---

[1]Section 1614(a)(4)(B)(i) of the Social Security Act states: "A recipient of benefits based on disability under this subchapter may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling on if such finding is supported by – in the case of an individual who is under the age of 18 – substantial evidence which demonstrates that there has been any medical improvement in the individuals impairment or combination of impairments."

**B.  THE ALJ DID NOT RELY ON THE OPINION OF THE MEDICAL EXPERT AND REASONABLY RELIED ON THE OPINION OF THE CONSULTING PSYCHOLOGIST**

Claimant argues that the ALJ improperly relied on the opinion of the medical expert and the consulting psychologist while not considering other evidence essential to the case. The Court will first address the testimony of the medical expert, Dr. Lee, and then the ALJ's reliance upon the opinion of the consulting psychologist, Dr. Hilger.

The ALJ did not rely on the medical expert because Dr. Lee did not offer any medical opinions regarding the disability of Sharkie. At the ALJ's hearing on July 20, 2001, the ALJ initially questioned Claimant, R. 26-47, followed by Dr. Lee's questioning, R. 48-71. The Claimant states that Dr. Lee testified that Sharkie's "impairments essentially were based on her mother's failure to seek treatment." Pl. Mot. for Sum. Jud. 5. In the record, however, Dr. Lee never offers an opinion on the causes or medical reasons for Sharkie's disability.

Further, the ALJ, in his opinion, does not refer to any opinion or information offered by Dr. Lee, with the exception of mentioning that the Claimant seemed to have regarded Dr. Lee's questioning as "accusatory of her conduct as a mother" and proceeded to fall "into a fit of rage." R. 19. The ALJ subsequently ended the hearing, and stated that he would be sending Sharkie out for a psychological exam. R. 69-70.

Claimant also argues that the ALJ failed to give proper weight to treating sources, and additionally, gave too much weight to the consulting psychologist, Dr. Hilger. This Court finds that the ALJ did properly weigh treating sources and reasonably relied on the opinion

of Dr. Hilger. In the ALJ's opinion, he cites to the record regarding the evidence of three treating sources from Sharkie's scholastic life[2], and three treating sources that are doctors or mental health counselors.[3] Contrary to Claimant's assertion, the ALJ did not ignore other evidence.

Dr. Hilger's assessment of Sharkie's diagnosis was consistent with other school records and evaluations. School professionals consistently recorded observations that Sharkie had learning disabilities, and was low average in reading and mathematics. R. 109, 327-28. Her IEPs from 1999, 2000, and 2001 recommended she be placed in special education classes only in reading and mathematics, and general education classes in Science, Social Studies, Music and Physical Education. R. 306, 131-32. Further, the special education classes that the school professionals recommended were of the least restrictive type and for less that 50% of the school day. R. 114-15, 283-84, 266-67, 295-96, 298, 122, 306-07, 312, 319, 131. Several sources in the record attributed Sharkie's poor performance in school to her repeated tardiness and poor attendance. R. 325.

The reports from school professionals, particularly those requiring special placement, are important in assessing children with mental disorders. See 20 C.F.R. Part 404, Subpart

---

[2]The ALJ referred in his opinion to information in the record supplied by Ms. Sharon Chu-Davis, special education teacher, R. 118.; Dr. Janice A. Nicholson, M.A., school psychologist, R. 325-328.; and Gwendolyn Baker, learning disabilities teacher at Dunbar Vocational High School. R. 155.

[3]The ALJ referred in his decision to information in the record provided by Dr. Sheridan, M.D. R. 134-150; Dr. Nicole Sumida, M.S.W. R.193-198; and Dr. William Hilger, Ph.D. R. 199-205.

P, App. 1 § 112.00D. Several school professionals reported positive feedback from meetings with Sharkie, including comments that she had "average and appropriate functioning in class," R. 155, and that she was a "friendly and compliant child" who "put forth adequate effort in class despite not being able to work at grade level." R. 325. There is nothing in the ALJ's opinion that suggests that the entire record was not considered when the ALJ handed down his decision. However, the ALJ is not required to discuss every piece of evidence. *Rohan v. Chater*, 98 F.3d 996, 971 (7th Cir. 1996).

The ALJ is entitled to consider medical evidence and medical source opinions. 20 C.F.R. § 416.924a(a). Further, the ALJ will use the report from a consultative examination to resolve a conflict in the evidence if one exists. 20 C.F.R. § 416.919a(a)(2). The ALJ was correct in using the opinion of Dr. Hilger to resolve a conflict in the record, that is, the performance that Sharkie exhibited in her two meeting with Dr. Hilger was contrary to other evidence in the record regarding her overall compliance with testing procedures R. 327, her adequate effort, R. 325, and her appropriate behavior R. 155. In Sharkie's first session with Dr. Hilger, he noted her "extremely poor effort, lack of cooperation, and blatant malingering." R. 200, 202. This lack of effort led to a test score that put her in the "moderately handicapped range" which is inconsistent with the findings of school professionals and medical source opinions R. 200.

When a consultative examiner finds that Claimant's performance seems to involve "deliberate fabrication," the ALJ is entitled to rely heavily on that opinion. *Strunk v.*

*Heckler*, 732 F.2d 1357, 1360-61 (7th Cir. 1984). In *Strunk*, in a neurological examination of the Claimant, the doctor noted that Claimant could not "add 3+3" and blatantly underperformed in other areas, which was a contradiction of her normal ability. *Id.* Due to this discrepancy, the Court held that the validity of the result of that testing and Claimant's testimony were questionable. *Id.* The same is true in this case.

Given the record as a whole, the Court finds that the ALJ reasonably relied on the opinion of Dr. Hilger regarding Sharkie's impairments and level of functioning. Dr. Hilger's report confirms, as the rest of the record does, that Sharkie requires special education for learning disabilities. However, substantial evidence supports the ALJ's conclusion that she was not disabled. In *Keys*, the Seventh Circuit affirmed denial of benefits despite claimant's low intelligence and difficult family life and other factors. The Court held that the claimant could function in school, and that if they were to deem him disabled "so would millions of other children." 347 F.3d at 994. This conclusion is equally applicable to Sharkie who was functioning in school.

## IV. CONCLUSION

The ALJ applied the correct legal standard when assessing Sharkie under the new guidelines. The ALJ's conclusion that Sharkie is not disabled is supported by substantial evidence in the record. **For the reasons set forth in this opinion, Claimant's motion for summary judgment is denied and the Commissioner's motion for summary judgment**

is granted. The Commissioner's decision to deny Supplemental Security Income child's benefits to Claimant's daughter, Sharkie Harden, is affirmed.

SO ORDERED THIS 7th DAY OF JANUARY, 2005.


_Morton Denlow_
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**


**Copies mailed to:**

Mary Elizabeth Kopko
MCBREEN AND KOPKO
1525 East 53rd Street
Chicago, IL 60615


Counsel for Plaintiff

Kristin Weurffel
SPECIAL ASSISTANT
UNITED STATES ATTORNEY
200 West Adams, 30th Floor
Chicago, IL 60606


Counsel for Defendants